IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MIDWEST CANVAS CORP., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:23-cv-15198 |
| v. | ) ) | Judge Mary M. Rowland |
| NORSEMAN INC., an Alberta, Canada, corporation, | ) ) ) | Magistrate Judge Keri L. Holleb-Hotaling |
| Defendant. | ) ) | |

## DEFENDANT'S ANSWER TO COMPLAINT

Defendant, Norseman Inc. ("Norseman"), through its attorneys, answers Plaintiff's Complaint and states as follows:

### PARTIES

1.      Midwest Canvas is a corporation duly organized and existing under the laws of the State of Illinois, with a principal place of business in Chicago, Illinois. Midwest Canvas is engaged in the manufacture, distribution, and sale of, among other things, concrete curing blankets, woven polyethylene tarpaulins, and other products used in the construction field.

**ANSWER:**      Norseman lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 1.

2.      Upon information and belief, Norseman is a corporation organized and existing under the laws of the Province of Alberta, Canada, with a principal place of business in Edmonton, Alberta, Canada. At times relevant hereto, Norseman has been engaged in the business of the manufacture, distribution, and sale of, among other things, concrete curing blankets, tarpaulins, and other products used in the construction field.

**ANSWER:**      Norseman admits the allegations contained in Paragraph 2.

### JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over Midwest Canvas' federal claim pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

**ANSWER:**      Norseman admits the allegations contained in Paragraph 3.

4.      This Court has supplemental jurisdiction over Midwest Canvas' state law claims under 28 U.S.C. § 1367.

**ANSWER:**      Norseman denies the allegations contained in Paragraph 4.

5.      This Court has personal jurisdiction over Norseman. On its website, Norseman states that it has a distribution center in Chicago, Illinois. Personal jurisdiction is proper under 735 ILCS 5/2-209(a)-(c), because Norseman has transacted business within the Northern District of Illinois, engaged in tortious acts within the Northern District of Illinois, and has contacts with the State of Illinois commensurate with the United States Constitution and the Illinois Constitution, so as to submit itself to the jurisdiction and process of this Court. Norseman's acts of false advertising were committed in the Northern District of Illinois, Norseman has disseminated its false advertisements to consumers and distributors residing in the Northern District of Illinois, and Norseman has caused injury to Midwest Canvas within the Northern District of Illinois.

**ANSWER:**      Norseman admits that the Court has jurisdiction over it, but otherwise denies the allegations contained in Paragraph 5.

6.      Upon information and belief, Norseman has, on a continual basis, committed the acts alleged below within the Northern District of Illinois, in business interactions purposefully elicited by Norseman with or directed to residents of this District, including, inter alia, falsely misrepresenting the qualities of its products and other acts in violation of the Lanham Act, 15 U.S.C. § 1125(a), and other acts, which harm Midwest Canvas.

**ANSWER:**      Norseman states that the Complaint fails to demonstrate a violation of the Lanham Act, 15 U.S.C. § 1125(a).  Norseman denies the allegations contained in Paragraph 6.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c), as a substantial part of the events giving rise to Midwest Canvas' claims occurred and are continuing to occur in this district, and Norseman is subject to this Court's personal jurisdiction with respect to this action.

**ANSWER:**      Norseman admits that venue is proper, but otherwise denies the allegations contained in Paragraph 7.

## BACKGROUND

8.      Both Midwest Canvas and Norseman sell concrete curing blankets to distributors throughout the United States, such as contractor supply houses and lumberyards, who sell the blankets from their retail locations to end users such as contractors.

**ANSWER:**      Norseman lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 8.

2

9.     The insulating value or thermal resistance of concrete curing blankets is referred to as an R-value. Simply stated, the higher the R-value, the greater the insulating capability of the blanket.

**ANSWER:**     Norseman denies the allegations contained in Paragraph 9. Midwest Canvas' allegation that the higher the R-value, the greater the insulating capability of the blanket, does not account for all of the insulating materials in a testing environment.

10.     Since approximately 1996, Midwest Canvas has advertised and promoted R-values of its concrete curing blankets as determined by independent testing laboratories. Midwest Canvas' advertisements and test reports, among other things, describe the products tested; specify that the testing method ASTM C518 was utilized as a procedural guide; identify the individuals and entities that performed the testing; and identify materials and components with insulating capability which affect or increase R-value measurements.

**ANSWER:**     Norseman denies the allegations contained in Paragraph 10. Norseman states that the R-value Rule (formally, the "Trade Regulation Rule Concerning the Labeling and Advertising of Home Insulation") requires home insulation manufacturers, professional installers, new home sellers, and retailers to provide R-value information, based on the results of standard tests, to help inform consumers of home insulation (FTC Trade Regulation 16 CFR Part 460), and does not apply to the advertising of R-value of concrete curing blankets.

11.     Air gaps in and below concrete curing blankets affect the calculation of the R-value. Since approximately 1996 or 1997, Midwest Canvas has advertised and promoted R-values for its concrete curing blankets calculated both on the surface of concrete and with a 3-inch air gap between the concrete and the blanket.

**ANSWER:**     Norseman denies the allegations contained in the first sentence of Paragraph 11. Air gaps in and below concrete curing blankets affect the R-value of the system, not the R-value of the blanket. Norseman's promotion and advertising clearly states that R-values for its concrete curing blankets with air gaps are estimates only, as they reflect the R-value of the system not the blanket. Norseman denies the allegations contained in the second sentence of Paragraph 11. Midwest Canvas' advertising and promotion of R-value, is the R-value of the system and not its concrete curing blankets..

3

12.     In 2021, Norseman provided, along with its dealer price list, a lengthy discussion of R-values in which Norseman disputed the usefulness of R-values calculated with an air gap. (*See* document attached hereto as **Exhibit A**.) Norseman stated that R-values "can be very subjective [*sic*] to variables in test methods and application" and that variances in the "air gap between the blanket sample and the surface . . . provide high communicated result values . . . ." Nevertheless, Norseman asserted that it "has conducted testing on a number of current market competitive manufacturers [*sic*] blankets . . . and Norseman Insulated Blankets are comparable (equal to or higher) in R-Value scores."

**ANSWER:**     Norseman states that Exhibit A is a true and accurate copy of a document

disseminated by Norseman, states that Exhibit A speaks for itself, and denies all allegations

inconsistent with Exhibit A.  Norseman denies any and all further allegations contained in

Paragraph 12.

13.     Despite its prior acknowledgment of the significance of air gaps in calculating R-values, beginning in or about August 2023, Norseman began to promote and advertise to distributors an R-value for Norseman's concrete curing blankets with an *unspecified* air gap.

**ANSWER:**     Norseman denies the allegations contained in Paragraph 13.  Norseman's

promotion and advertising clearly states that R-values for its concrete curing blankets with air gaps

are estimates only, as they reflect the R-value of the system not the blanket.

14.     Norseman has disseminated or caused the dissemination of information and/or promotional documents pertaining to the R-value of its concrete curing blankets in Illinois and elsewhere. A true and correct copy of one of these documents is attached hereto as **Exhibit B**. Norseman states in this document that its 3-layer blanket has an R-value of 4.00, that its 4-layer blanket has an R-value of 4.75, that its 6-layer blanket has an R-value of 5.50, and that its 8-layer blanket has an R-value of 7.00, when calculated "using tested results and published R-Value data" for air gaps of various, undisclosed sizes. Upon information and belief, these statements are false.

**ANSWER:**     Norseman admits the allegations contained in the first sentence of

Paragraph 14.  Norseman admits that Exhibit B is a true and correct copy of a document prepared

by Norseman and disseminated by Norseman, states that Exhibit B speaks for itself, and denies all

allegations inconsistent with Exhibit B.  Norseman's promotion and advertising clearly states that

R-values for its concrete curing blankets with air gaps are estimates only, as they reflect the R-

value of the system not the blanket.  Norseman denies any and all further allegations contained in

Paragraph 14.

4

15. In its promotional document, Norseman does not disclose the type of air gap, the size of air gap, or the source of the published test data relied upon to calculate the R-values it advertises.

**ANSWER:** Norseman states that Exhibit B speaks for itself, and denies all allegations inconsistent with Exhibit B. Norseman denies any and all further allegations contained in Paragraph 15. Norseman's promotion and advertising clearly states that R-values for its concrete curing blankets with air gaps are estimates only, as they reflect the R-value of the system not the blanket.

16. In its promotional document, Norseman states that "[n]ot all thickness [*sic*] have been tested and some results are extrapolated."

**ANSWER:** Norseman states that Exhibit B speaks for itself, and denies all allegations inconsistent with Exhibit B.

17. Plaintiff Midwest Canvas first learned of Norseman's promotion and advertisement on or about August 25, 2023. On September 5, 2023, Midwest Canvas demanded in writing, among other things, that Norseman supply documentation corroborating the advertised R-values. A true and correct copy of Midwest Canvas' September 5, 2023, demand letter is attached hereto as **Exhibit C**.

**ANSWER:** Norseman lacks sufficient knowledge to admit or deny the allegations contained in the first sentence of Paragraph 17. Norseman admits Exhibit C is a true and accurate copy of a letter sent by Midwest Canvas' counsel to Norseman. Norseman states further that Exhibit C speaks for itself, and Norseman denies any allegation inconsistent with Exhibit C. Norseman denies any and all further allegations contained in Paragraph 17.

18. Norseman responded on September 8, 2023, stating that it "rejects all of the allegations" in Midwest Canvas' letter, that "[t]he promotional literature contains all information comprising the R Value Statement," and that "Norseman's promotion and advertising of its products is done in compliance with all applicable law." Norseman did not address the substance of Midwest Canvas' letter or provide testing results or any other information to support the claims made in its advertisement. A true and correct copy of Norseman's response is attached hereto as **Exhibit D**.

**ANSWER:** Norseman admits Exhibit D contains a true and accurate copy of a letter sent by Norseman to Midwest Canvas' counsel. Norseman states further that Exhibit D speaks for

itself, and Norseman denies any allegation inconsistent with Exhibit D. Norseman denies any and all further allegations contained in Paragraph 18.

19.    Midwest Canvas obtained a Norseman 4-layer blanket and submitted it to an independent testing facility. Using the same methods with which Midwest Canvas' concrete curing blankets are tested, the independent testing facility calculated an R-value of only 2.09 for Norseman's 3-layer blanket with a 3-inch air gap, in contrast to the 4.00 R-value that Norseman advertises with an unspecified air gap.

**ANSWER:**    Norseman lacks sufficient knowledge to admit or deny the allegations contained in the first sentence of Paragraph 19. Norseman lacks sufficient knowledge to admit or deny the allegations contained in the second sentence of Paragraph 19 with regard to any testing allegedly performed by Midwest Canvas. Norseman states that Plaintiff erred in testing a 4-layer blanket in order to determine the R-value of a 3-layer blanket. Norseman further states that Midwest Canvas' tests do not account for all of the insulating materials in the testing environment. Norseman denies any and all further allegations contained in Paragraph 19.

20.    Independent testing confirms that Norseman's advertisement is false; Norseman's disclaimers further suggest that its asserted R-values are not supported by independent testing; and Norseman has refused to provide testing results or any other support upon request. Norseman's false representations regarding its blankets' R-values are intentional.

**ANSWER:**    Norseman denies the allegations in Paragraph 20. Norseman's promotion and advertising clearly states that R-values for its concrete curing blankets with air gaps are estimates only, as they reflect the R-value of the system not the blanket. Stating further, based on the allegations contained in Paragraph 19 with respect to the testing allegedly performed by Midwest Canvas, it is clear that Midwest Canvas performed testing that was not consistent with the statements made in Exhibit B. Norseman admits that it did not provide its own testing results to Midwest Canvas because it was not legally obligated to do so. Norseman denies any and all further allegations contained in Paragraph 20.

## COUNT I
## VIOLATION OF LANHAM ACT, 15 U.S.C. § 1125(a)

21.     Midwest Canvas repeats and realleges the allegations of paragraphs 1 through 20 of this Complaint as though fully set forth herein.

**ANSWER:**     Norseman repeats and realleges its answers to Paragraphs 1 through 20 of this Answer as though fully set forth herein.

22.     Norseman's statements are false and/or misleading and likely to cause confusion or mistake. Norseman's advertising is false in that it misrepresents the nature, characteristics, quality, and/or attributes of Norseman's products.

**ANSWER:**     Norseman denies the allegations contained in Paragraph 22.

23.     Norseman's misrepresentations in commercial advertising and promotion were made in commerce and were disseminated to customers Midwest Canvas and end users of Midwest Canvas' products.

**ANSWER:**     Norseman denies the allegations contained in Paragraph 23.

24.     Norseman's advertisement was deliberately designed to mislead customers.

**ANSWER:**     Norseman denies the allegations contained in Paragraph 24.

25.     Norseman's deceptive statements are material in that they are likely to influence the purchasing decisions of customers.

**ANSWER:**     Norseman denies the allegations contained in Paragraph 25.

26.     Norseman's statements have misled, or have a tendency to mislead, customers and/or potential customers into acquiring its products.

**ANSWER:**     Norseman denies the allegations contained in Paragraph 26.

27.     Norseman's advertising is damaging to Midwest Canvas' reputation.

**ANSWER:**     Norseman denies the allegations contained in Paragraph 27.

28.     Norseman's misrepresentations have and will injure Midwest Canvas by causing Midwest Canvas to lose customers and sales, resulting in business losses in an amount to be proven at trial.

**ANSWER:**     Norseman denies the allegations contained in Paragraph 28.

## COUNT II
## VIOLATION OF UNIFORM DECEPTIVE TRADE PRACTICES ACT
## 815 ILCS 510/1 ET SEQ.

29.     Midwest Canvas repeats and realleges the allegations of paragraphs 1 through 20 of this Complaint as though fully set forth herein.

**ANSWER:**     Norseman repeats and realleges its answers to Paragraphs 1 through 20 of this Answer as though fully set forth herein.

30.     Norseman's advertisement constitutes a deceptive trade practice as described in the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.

**ANSWER:**     Norseman states that the Complaint fails to demonstrate a deceptive trade practice as described in the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*. Norseman denies the allegations contained in Paragraph 30.

31.     Norseman's misleading advertisements are likely to cause confusion, deception, and mistake, and have caused irreparable and immediate injury to Midwest Canvas, for which Midwest Canvas has no adequate remedy at law.

**ANSWER:**     Norseman denies the allegations contained in Paragraph 31.

32.     Norseman's violative conduct was undertaken intentionally, willfully, and with wanton disregard of Midwest Canvas' rights.

**ANSWER:**     Norseman denies the allegations contained in Paragraph 32.

**COUNT III**
**COMMON LAW UNFAIR COMPETITION**

33.     Midwest Canvas repeats and realleges the allegations of paragraphs 1 through 20 of this Complaint as though fully set forth herein.

**ANSWER:**     Norseman repeats and realleges its answers to Paragraphs 1 through 20 of this Answer as though fully set forth herein.

34.     By committing the acts alleged herein, Norseman is guilty of unfair competition, deceptive advertising, and unfair trade practices, all in violation of Illinois common law unfair competition.

**ANSWER:**     Norseman denies the allegations contained in Paragraph 34.

35.     Norseman's acts and unfair competition are likely to cause confusion, deception, and mistake, and have caused and will continue to cause irreparable and immediate injury to Midwest Canvas, for which it has no adequate remedy at law.

**ANSWER:**     Norseman denies the allegations contained in Paragraph 35.

36.     Midwest Canvas has suffered damages as a result of Norseman's acts of unfair competition.

**ANSWER:**     Norseman denies the allegations contained in Paragraph 36.

37.     Norseman's acts of unfair competition are willful and in wanton disregard of Midwest Canvas' rights.

**ANSWER:**     Norseman denies the allegations contained in Paragraph 37.

**COUNT IV**
**CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**815 ILCS 505/1 *et seq.***

38.     Midwest Canvas repeats and realleges the allegations of paragraphs 1 through 20 of this Complaint as though fully set forth herein.

**ANSWER:**     Norseman repeats and realleges its answers to Paragraphs 1 through 20 of this Answer as though fully set forth herein.

39.     Norseman's false and misleading statements regarding its concrete curing blankets constitute a violation of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

**ANSWER:**     Norseman states that the Complaint fails to demonstrate a violation of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.  Norseman denies the allegations contained in Paragraph 39.

40.     Norseman's conduct has caused and is causing immediate and irreparable injury to Midwest Canvas and will continue to both damage Midwest Canvas and to deceive the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

**ANSWER:**     Norseman denies the allegations contained in Paragraph 40.

Respectfully submitted,

NORSEMAN INC.


By: */s/Martin J. O'Hara*
        One of Its Attorneys

9

Martin J. O'Hara (ARDC #6229971)
MUCH SHELIST, P.C.
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 521-2000
mohara@muchlaw.com